UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:18-CV-22802-KMW

Daniel Getz, individually and on behalf of all others
similarly situated,

        Plaintiff,

        v.

The DIRECTV, LLC, a California Corporation
and Viasat, Inc., d/b/a Exede Internet, a California
Corporation, and Accelerated Technology Services
Group, LLC,

        Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT VIASAT, INC.'S MOTION TO COMPEL ARBITRATION**

    Plaintiff Daniel Getz, by and through undersigned counsel hereby files his Response in Opposition to Defendants' Motion to Compel Arbitration ("Motion to Compel") [DE #15], and in support states:

**I.   INTRODUCTION**

    Plaintiff Daniel Getz brought this action against Defendants, DIRECTV, LLC ("DIRECTV"), ViaSat, Inc., d/b/a Exede Internet ("ViaSat"), and Accelerated Technology Services Group, LLC ("Accelerated") (collectively "Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47. U.S.C. § 227. DIRECTV and Exede, as part of a joint-marketing effort, obtained the services of Accelerated to engage in unsolicited marketing. Defendants knowingly authorized Accelerated to send thousands of unsolicited text messages marketing DirectTV services to Plaintiff's and thousands of individuals' cellular telephones, resulting in an invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion in violation of the TCPA.

    Rather than litigate this case on the merits, ViaSat claims that the Court should compel arbitration, and dismiss or stay the case, based on the Customer Agreement (the "Agreement") between Plaintiff and ViaSat for residential internet services, entered into by Plaintiff when he was

a customer of ViaSat. A true and correct copy of the Agreement is attached as Exhibit A to the Motion to Compel [DE #15-1]. ViaSat claims that Plaintiff waived the right to bring an action in court, to a trial by jury, or to participate in a class action, and therefore, Plaintiff's claim must be arbitrated on an individual basis. ViaSat is wrong because Plaintiff's claim does not fall within the scope of the arbitration provision of the Agreement ("Arbitration Provision"), nor does it relate to the Agreement at all. ViaSat makes selectively edits out a key portion of the Arbitration Provision to obscure why it does not apply and make it appear that Plaintiff agreed to arbitrate any and all claims between the parties in perpetuity. However, when the Court reviews the Arbitration Provision in its entirety, it will become abundantly clear that the Arbitration Provision only applies to specific claims related to the Agreement and the internet service previously provided by ViaSat, neither of which are implicated here. Further, ViaSat's argument ignores recent Eleventh Circuit precedent that refused to compel arbitration after reviewing a nearly identical arbitration agreement in a TCPA suit. Therefore, ViaSat's claim that this action must be arbitrated should be rejected by this Court.

## II. ARGUMENT

### A. Legal Standard

"Arbitration . . . 'is simply a matter of contract' such that parties cannot be required to arbitrate a matter unless they have agreed to arbitration." *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1022 (11th Cir. 2018) (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995))). In ruling on a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *See Sims v. Clarendon Nat'l Ins. Co.*, 336 F.Supp.2d 1311, 1326 (S.D. Fla. 2004). "[I]t is the language of the contract that defines the scope of disputes subject to arbitration." *Gamble v. New Eng. Auto Fin., Inc.*, No. 17-15343, 2018 U.S. App. LEXIS 14608, at *3 (11th Cir. May 31, 2018) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). "[N]othing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Id.* (alteration in in original). "[C]ourts may not require arbitration beyond the scope of the contractual agreement, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *JPay, Inc. v. Kobel*, No. 17-13611, 2018 U.S. App.

LEXIS 26609, at *8 (11th Cir. Sep. 19, 2018) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). "The party asserting the existence of a contract has the burden of proving its existence and its terms." *Dasher*, 882 F.3d at 1023 (citations omitted).

"Motions to compel arbitration are reviewed under the summary judgment standard." *Julian v. Rollins, Inc.*, No. 8:16-cv-3092-T-30TBM, 2017 U.S. Dist. LEXIS 16936, at *5 (M.D. Fla. Feb. 7, 2017) (citing *Johnson v. KeyBank Nat'l Assoc.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "'a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'") (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785-86 (11th Cir. 2008))). Accordingly, "only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Magnolia Capital Advisors, Inc.*, 272 F. App'x at 785-86. "[A] district court considering the making of an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Id.* at 786.

### B. Plaintiff's Claims Are Outside the Scope of the Arbitration Agreement

Plaintiff does not dispute that he entered into a valid agreement to arbitrate with ViaSat. However, Plaintiff's claims fall outside the Arbitration Provision both because the present action has nothing to do with the former account relationship between Plaintiff and ViaSat, and this action is clearly outside the scope of the Arbitration Provision. Plaintiff's claim involves conduct by Defendants that not only occurred after the termination of the account which is the subject matter of the agreement, but also involves an entirely separate and additional violation of a federal law that is not contemplated by the Agreement. Requiring arbitration solely because Plaintiff and ViaSat once contracted for services is an unfair and unreasonable interpretation of the contract and unduly burdensome on Plaintiff and others similarly situated. Plaintiff's claim is that ViaSat violated the TCPA. The only connection to the Agreement this claim has is that ViaSat obtained Plaintiff's cellular number through the previous account relationship governed by the Agreement. This connection is not, in any reasonable sense, enough to establish that the post-agreement conduct is related in any way to the Agreement with Plaintiff.

In citing the Arbitration Provision in its Motion to Compel, ViaSat selectively omits key portions of the Arbitration Provision to make it appear broader than it actually is. ViaSat would have this Court believe that it covers any and all claims between Plaintiff and ViaSat without regard to the substance or type of claim, and in perpetuity. However, the Arbitration Provision's scope is actually much narrower than ViaSat represents to the Court. The Arbitration Provision states:

> To expedite resolution of issues and control the cost of disputes, you and ViaSat agree that any legal or equitable claim *relating to this Agreement, any addendum, or your Service (referred to as a "Claim"*) will be resolved as follows . . . If you and ViaSat are unable to resolve the Claim within 60 days after Notice is received, then ViaSat and you agree to arbitrate **any and all Claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
> 
> - Any Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, statute, fraud, misrepresentation, tort, or any other legal theory;
> - Any Claims that arose before this Agreement or any prior agreement between us;
> - Any Claims that are currently the subject of a purported class action suit in which you are not a member of a certified class; and/or
> - Any Claims that may arise after the termination of this Agreement.

(DE# 15-1 at § 8.4) (bold emphasis in original, bold and italic emphasis added).

Notably, ViaSat failed to acknowledge that "Claim" is a defined term. "When parties define the terms used in a contract, those definitions govern the construction of the contract." *All. Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 903 (11th Cir. 2000) (citations omitted); *accord IE Miller Servs. v. Ensign US S. Drilling LLC*, No. 01-16-00528-CV, 2017 Tex. App. LEXIS 7875, at *8 (App. Aug. 17, 2017) ("We cannot interpret a contract to ignore clearly defined terms [] Were we to adopt such an interpretation, we would be impermissibly rewriting the contract and redefining previously agreed upon terms.").

The Agreement clearly and unambiguously defines "Claim" to include only a "legal or equitable claim relating to this Agreement, any addendum, or your Service." However, ViaSat argues that Plaintiff agreed to arbitrate "'**any and all claims'** between ViaSat and Plaintiff," full stop. Motion to Compel at 6 (emphasis in original). This misleading argument fails to inform the Court about the limiting language in the Arbitration Provision that ViaSat conveniently omitted from its Motion to Compel, and when read in full, the Arbitration Provision clearly excludes this

lawsuit. This lawsuit does not relate to the Agreement, an addendum to the Agreement, or Plaintiff's service from ViaSat. The TCPA claim is directed at a post-contract termination solicitation to sell a new service, one that Plaintiff did not subscribe to under the Agreement.

The best ViaSat can say is that Plaintiff was a former customer to whom ViaSat sent a text message in an attempt to regain his business. This clearly does not relate to his former agreement or service. A lawsuit alleging a violation of the TCPA does not fall within the Agreement defined Claim. Plaintiff's lawsuit involves receiving unsolicited marketing text messages from or on behalf of Defendants—a text that has absolutely no connection to the Agreement. Sending unsolicited text messages to previous customers to solicit their business does not relate to the Agreement, nor is it referencing any addendum or Service. The text messages at issue were a clear and independent solicitation to persuade Plaintiff to enter into another contract in violation of the TCPA.

Contrary to ViaSat's conclusory arguments, this case is nearly identical to a case where the Eleventh Circuit recently affirmed the denial of a motion to compel arbitration. In *Gamble v, New Eng. Auto Fin., Inc.*, 2018 U.S. App. LEXIS 14608, at *9 (11th Cir. 2018), a case ViaSat half-heartedly attempts to distinguish in a footnote, the Eleventh Circuit held that an arbitration provision of a loan agreement was not broad enough to encompass the plaintiff's TCPA claim and therefore could not be arbitrated. The plaintiff in *Gamble* entered into an auto loan agreement with defendant, requiring arbitration of "any claim, dispute, or controversy . . . whether preexisting, present or future, that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement." *Id*. After plaintiff paid off the loan and the agreement terminated, she began receiving text messages from defendant offering her a new loan. *Id*. at *2. The Eleventh Circuit disagreed with the defendant's claim that the agreement governed the plaintiff's TCPA claim because it "touched matters" to the agreement, stating:

> The plain language of the Arbitration Provision requires that the dispute "arise[] from or relate[] to this Agreement or the Motor Vehicle securing this Agreement." Although this language makes the arbitration provision broad, it does not make it limitless. *See Princess Cruise Lines*, 657 F.3d at 1218 (stating "the term 'arising out of' is broad, but not all encompassing" while recognizing that the dispute in question must be an "immediate, foreseeable result of the performance of contractual duties"). Here, Ms. Gamble signed an agreement whereby NEAF promised to provide her with the necessary funds to purchase an automobile on a particular date, in exchange for her promise to pay NEAF back—with interest—by

a later date. The Arbitration Provision only applies to disputes arising out of, or related to, this agreement.
</blockquote>

*Id*. at *6 (alterations in original). The *Gamble* court further held that the claim arose from a "separate, distinct federal law" rather than arising from the money that the plaintiff borrowed from the defendant. *Id*. at *7 (citing *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F. 3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause.")).

Similarly, Plaintiff's TCPA claim arises from the same separate and distinct federal law that is not related to the Agreement and is therefore not governed by the Arbitration Provision. Like the contract in *Gamble*, the Arbitration Provision at issue here limits its scope to disputes regarding the services provided under the Agreement and—instead of the motor vehicle securing the loan contract—the satellite tv/internet services offered under the Agreement. The Arbitration Provision here is equally as narrow in scope to that in *Gamble*, and this Court should deny the Motion to Compel for the same reason. Thus, ViaSat's Motion to Compel should be denied.

ViaSat misguidedly attempts to use the language in the Arbitration Provision including "[a]ny Claims that may arise after the termination of this Agreement," as a basis for compelling arbitration here. (DE# 15-1 at § 8.4). However, the fact that the Arbitration Provision includes claims that arise after termination of the Agreement, does not expand the scope of a "Claim" subject to arbitration as defined by the agreement. Rather, it only makes clear that it allows claims related to the Agreement or services that arise after the Agreement is terminated. For example, if the customer terminates his internet service and there is a dispute over the final invoice or the customer fails to return leased equipment, the Arbitration Provision could be invoked because these are claims related to the Agreement and services even though the legal claims arose after the termination of the Agreement. Here, ViaSat sent marketing texts to solicit Plaintiff and others to buy a new service after the contract was terminated. That act is unrelated to the Agreement or the service to which Plaintiff previously subscribed.

### C. The Arbitration Provision Should Be Enforced as Written, but ViaSat Advocates for an Interpretation That Would Render It Unconscionable

As stated above, the plain meaning of the Arbitration Provision, when properly read in its entirety, clearly excludes the Plaintiff's TCPA lawsuit. ViaSat's argument is that the Arbitration

Provision should be read to include any and all claims between the parties at any time in perpetuity. ViaSat cites a number of cases it claims stand for the proposition that such broad arbitration provisions are regularly enforced by federal courts. ViaSat's argument overstates the scope of the arbitration provisions in those cases and ignores *Gamble*.

For example, ViaSat states that the Eleventh Circuit has held that "[a]n arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract." Motion to Compel at 7 (citing *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir. 1982), overruled on other grounds by *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). However, ViaSat neglected to quote the immediate proceeding sentence in that case stating "[b]y its own terms the contract between the parties covers not only disputes arising out of the agreement, but in the disjunctive includes 'any controversy between us arising *out of your business*.'" (emphasis in original). By ignoring the context, ViaSat fails to appreciate that the Eleventh Circuit did not uphold an arbitration agreement that was unlimited in scope, but rather held that the arbitration agreement covered matters tangentially related to the agreement regarding the contracting party's business. In reality, the concept addressed in *Belke* merely allows for application of the arbitration provision to pursue a non-contract claim if the claim arose out of the business relationship that is the subject of the contract. That is not the case here.

Here, ViaSat attempts to argue a position the Southern District of California essentially described as indefensible—that an arbitration agreement was so unlimited that it had no limiting principle. *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1262-63 (S.D. Cal. 2012). In *In Re Jiffy Lube International*, the district court concluded that an arbitration clause covering "any and all disputes" "would clearly be unconscionable." *Id*. at 1263. The court cited *Stein v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003), in which Judge Posner noted the "absurd results" that would follow from an arbitration clause not tethered to an underlying agreement:

> [I]f Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash. . . Instant Cash could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of Instant Cash picked Smith's pocket when she came in to pay back the loan, and Smith sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference that the conversion had occurred in Smith's home 20 years after her last transaction with Instant Cash.

*Id*. at 777. He opined that such results "might be thought unconscionable," but did not have to address that issue because the agreement was susceptible of a construction limiting "the duty to arbitrate to disputes arising under 'this Agreement.'" *Id*. at 777-78.

Similarly, here, this Court need not ultimately conclude that the Arbitration Provision is unconscionable because the Court should simply find that the scope of the provision excludes Plaintiff's TCPA claim. However, the interpretation that ViaSat advocates for would render the Arbitration Provision unconscionable. For example, forcing arbitration on the present TCPA matter would be equivalent to compelling arbitration if Plaintiff was rear-ended by an employee driving a ViaSat truck even though the Agreement terminated. Adopting ViaSat's view of the Arbitration Provision would mean there is no logical principle that would limit its scope to the prior account relationship and would read the provision to be as broad as the absurd result hypothesized by Judge Posner in *Stein*. No reasonable person would think that signing a contract with an arbitration clause would obligate that person to arbitrate literally every possible dispute he or she might have with the service provider during and especially after the contractual relationship terminated. Rather, a reasonable person would be expressing, at most, an intent to agree to arbitrate disputes connected in some way to the service purchased from ViaSat. As explained above, Plaintiff's claims and the Agreement are not so connected. Thus, this Court should enforce the Arbitration Provision as written and reject ViaSat's unconscionable and overbroad interpretation and deny the Motion to Compel.

## IV. CONCLUSION

For the foregoing reasons, there is no basis to compel arbitration. There is no agreement to arbitrate a TCPA claim between these parties as the claim is completely outside the scope of the Agreement. Because there is no basis to compel arbitration, there is no basis to stay or dismiss this case. Thus, Plaintiff on behalf of himself and others similarly situated requests that the Court deny ViaSat's Motion to Compel.

Date: September 26, 2018

Respectfully Submitted by:

| | |
|---|---|
| /s/ *Joshua R. Levine*_____<br>JOSHUA R. LEVINE<br><br>**KOPELOWITZ OSTROW<br>FERGUSON WEISELBERG GILBERT**<br>*Jeff Ostrow, Esq.*<br>Florida Bar No. 121452<br>ostrow@kolawyers.com<br>*Joshua R. Levine, Esq.*<br>Florida Bar No. 91807<br>levine@kolawyers.com<br>One West Las Olas Blvd., Suite 500<br>Fort Lauderdale, FL 33301<br>Telephone: 954-525-4100 | **EDLESBERG LAW, P.A.**<br>*Scott A. Edlesberg, Esq.*<br>Florida Bar No. 0100537<br>scott@edelsberglaw.com<br>19495 Biscayne Blvd. #607<br>Aventura, FL 33180<br>Telephone: 305-975-3320<br><br>**SHAMIS & GENTILE, P.A.**<br>*Andrew J. Shamis, Esq.*<br>Florida Bar No. 101754<br>ashamis@shamisgentile.com<br>14 NE 1st Avenue, Suite 400<br>Miami, Florida 33132<br>Telephone: 305-479-2299<br><br>*Counsel for Plaintiff and the Class* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 26, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

       /s/ *Joshua R. Levine*_____
       JOSHUA R. LEVINE