UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-22802-CIV-MARTINEZ/AOR

DANIEL GETZ, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

DIRECTV, LLC,
VIASAT, INC., and
ACCELERATED TECHNOLOGY
SERVICES GROUP, LLC.

    Defendants.
_____/

## ORDER

THIS CAUSE came before the Court upon Defendant ViaSat, Inc.'s ("ViaSat") Motion to Compel Arbitration and to Dismiss or Stay Proceedings (hereafter, "Motion to Compel Arbitration") [D.E. 15]; and Defendant DIRECTV, LLC's ("DIRECTV") Motion and Incorporated Memorandum to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6) or, in the Alternative, to Stay the Case (hereafter, "Motion to Dismiss") [D.E. 20]. These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 36]. The undersigned held a hearing on these matters on December 12, 2018 [D.E. 42]. For the reasons stated below, the Motion to Compel Arbitration [D.E. 15] and the Motion to Dismiss [D.E. 20] are DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

This class action is brought by Plaintiff Daniel Getz ("Plaintiff"), individually and on behalf of all others similarly situated, against Defendants ViaSat, DIRECTV and Accelerated Technology Services Group, LLC ("Accelerated") (together, "Defendants"), alleging that they violated the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., by sending Plaintiff a telemarketing text message. See Amended Class Action Complaint (hereafter, "Amended Complaint") [D.E. 12 at 1-2].

On April 5, 2016, Plaintiff entered into a Customer Agreement ("Agreement") with ViaSat for residential internet services. See Agreement [D.E. 15-1]. The Agreement contained the following provision regarding contact information (hereafter, "Contact Provision"):

> 8.2 Contact Information. You agree that by entering into this Agreement and providing ViaSat with your wireless phone number and/or any other telephone number and/or your e-mail address, ViaSat or its agents may contact you for: (a) any account-related issues by calling or texting you at such number(s) using a prerecorded/artificial voice or text message delivered by an automatic telephone dialing system and/or using a call made by live individuals, and/or (b) for any account-related issues or for marketing purposes by sending an e-mail to such e-mail address. The consent provided here continues even if your Service terminates. If you do not wish to receive marketing emails, you may follow the opt-out instructions contained in any such email by making an opt-out request or by visiting www.exede.com/opt-out.

See Agreement [D.E. 15-1 at 6].

The Agreement also contained the following provision regarding dispute resolution (hereafter, "Arbitration Provision"):

> 8.4 Dispute Resolution. To expedite resolution of issues and control the costs of disputes, you and ViaSat agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows: We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding until at least 60 days after one of us notifies the other of a Claim in writing ("Notice"). You will send your Notice to the address on the first page of this Agreement to the attention of the ViaSat Legal Department and we will send our Notice to your billing address. If you and ViaSat are unable to resolve the Claim within 60 days after Notice is received, then ViaSat and you agree to arbitrate any and all Claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
> - Any Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, statute, fraud, misrepresentation, tort, or any other legal theory;
> - Any Claims that arose before this Agreement or any prior agreement between us;
> - Any Claims that are currently the subject of a purported class action suit in which you are not a member of a certified class; and/or
> - Any Claims that may arise after the termination of this Agreement.

Id.

The Agreement incorporated the Exede Subscriber Privacy Policy (hereafter, "Privacy Policy"). Id. at 2; Privacy Policy [D.E. 27-1 at 5-9]. The Privacy Policy stated that ViaSat may use its customers' information, including their phone numbers, to, *inter alia*, market ViaSat's services to its customers and engage third parties to help ViaSat market its services; and contact customers with information, newsletters and promotional materials from ViaSat or on behalf of its partners and affiliates. See Privacy Policy [D.E. 27-1 at 7].

After Plaintiff ended his account relationship with ViaSat, he received the following text message to his personal cellular phone on February 9, 2018 (hereafter, the "Text Message"):

> Exede customers: Order DIRECTV today and get DIRECTV for $35/mo + free $200 VISA gift card! 150 channels. Call to order 800-845-1010.

See Amended Complaint [D.E. 12 at 7].

Plaintiff commenced this class action against Defendants on July 12, 2018 [D.E. 1] and filed the Amended Complaint on August 15, 2018 [D.E. 12]. In the Amended Complaint, Plaintiff alleges that Accelerated obtained Plaintiff's telephone number through its contractual relationship with ViaSat and DIRECTV, and that Plaintiff received the Text Message because Accelerated was marketing to former customers of ViaSat in hopes of selling them new products offered by DIRECTV. See Amended Complaint [D.E. 12 at 7]. Plaintiff further alleges that the impersonal and generic nature of the Text Message demonstrates that Defendants used an automatic telephone dialing system ("ATDS"), to which he never consented, in violation of the TCPA. Id. at 8. He also alleges that the number used by Defendants to send the Text Message was a "long code," which is "a standard 10-digit phone number that enabled Defendants to send text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual." Id. at 9. He

3

claims that to send the Text Message, Defendants utilized a combination of hardware and software systems, which had the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention. Id. Plaintiff alleges that the Text Message caused him actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, conversion, inconvenience and disruption to his daily life. Id.

On August 29, 2018, ViaSat filed the instant Motion to Compel Arbitration, arguing that the Arbitration Provision is binding and enforceable against Plaintiff; that Plaintiff's claim falls within the scope of the Agreement and the Arbitration Provision; and that the claims must be arbitrated and the instant case be dismissed or, in the alternative, stayed pending the conclusion of the arbitration proceedings [D.E. 15]. On September 26, 2018, Plaintiff filed his Response in Opposition to the Motion to Compel Arbitration (hereafter, "Arbitration Response") arguing that his claims are outside the scope of the Arbitration Provision [D.E. 25]. ViaSat filed its Reply in Further Support of its Motion to Compel Arbitration (hereafter, "Arbitration Reply") on October 3, 2018 [D.E. 27].

On September 21, 2018, DIRECTV filed the instant Motion to Dismiss, arguing that Plaintiff failed to sufficiently allege that Accelerated used an ATDS to send the Text Message [D.E. 20]. Alternatively, in its Motion to Dismiss, DIRECTV argues that the case should be stayed pending completion of the Federal Communications Commission's ("FCC") rulemaking process on the issue of what constitutes an ATDS. Id. at 14-19. On October 5, 2018, Plaintiff filed his Response in Opposition to DIRECTV's Motion to Dismiss (hereafter, "Dismissal Response") arguing that his pleading sufficiently states a TCPA claim and that an indefinite stay is not warranted [D.E. 28]. On October 12, 2018, DIRECTV filed its Reply in Support of its Motion to Dismiss (hereafter, "Dismissal Reply") [D.E. 32]. On December 11, 2018, Plaintiff filed a Notice of Supplemental Authority in further support of the Arbitration Response and the Dismissal Response [D.E. 41].

## **MOTION TO COMPEL ARBITRATION**

### **Applicable Law**

"The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626-27 (1985); Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002)). "The FAA embodies a liberal federal policy favoring arbitration agreements." Id. (citations omitted). Pursuant to the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

To determine whether parties should be compelled to arbitrate a dispute, courts consider: (1) whether an enforceable written agreement to arbitrate exists; (2) whether the issues are arbitrable; and (3) whether the party seeking arbitration has waived the right to arbitrate. Sims v. Clarendon Nat. Ins. Co., 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004). The language of the contract defines the scope of disputes that are subject to arbitration. Gamble v. New Eng. Auto Fin., Inc., 735 F. App'x 664, 665 (11th Cir. 2018) (citing E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002)). "When parties define the terms used in a contract, those definitions govern the construction of the contract." All. Metals, Inc. v. Hinely Indus., Inc., 222 F.3d 895, 903 (11th Cir. 2000) (citations omitted). "[C]ourts may not require arbitration beyond the scope of the contractual agreement, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" JPay, Inc. v. Kobel, 904 F.3d 923, 929 (11th Cir. 2018) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

## **Discussion**

The parties do not dispute that Plaintiff entered into a valid agreement to arbitrate with ViaSat. ViaSat contends that Plaintiff's TCPA claim is subject to arbitration because the Arbitration Provision covers any claims, including those arising after the termination of the Agreement. See Motion to Compel Arbitration [D.E. 15]; Arbitration Reply [D.E. 27]. Plaintiff argues that his TCPA claim falls outside the scope of the Arbitration Provision because it does not relate to his former account relationship with ViaSat and because it does not meet the Arbitration Provision's definition of a "Claim." See Arbitration Response [D.E. 25].

The Eleventh Circuit held that a similar arbitration provision was not broad enough to subject the plaintiff's post-agreement TCPA claim to arbitration. See Gamble, 735 F. App'x at 667. In Gamble, the plaintiff filed a TCPA claim against the defendant, an auto loan financing company, after receiving text messages from the defendant seeking new business. Id. at 664-65. The plaintiff had signed an auto loan agreement that contained an arbitration provision, which required arbitration of any "claim, dispute or controversy . . . whether preexisting, present or future, that in any way arises from or relates to [the auto loan agreement]." Id. at 665. The Eleventh Circuit affirmed the district court's denial of the defendant's motion to compel arbitration, holding that the TCPA claim arose "from post-agreement conduct that allegedly violates a separate, distinct federal law." Id. at 666.

Here, after the conclusion of ViaSat's account relationship with Plaintiff, it allegedly provided Accelerated with Plaintiff's telephone number, and Accelerated sent the Text Message. See Amended Complaint [D.E. 12 at 7-8]. Therefore, like the claim in Gamble, Plaintiff's TCPA claim arose "from post-agreement conduct that allegedly violates a separate, distinct federal law," and is not covered by the Agreement. See Gamble, 735 F. App'x at 666.

Additionally, the Arbitration Provision expressly defines a "Claim" as "any legal or equitable claim relating to this Agreement, any addendum, or [Plaintiff's] Service." See Agreement [D.E. 15-1 at 6]. Thus, that definition of "Claim" governs construction of the Agreement. See All. Metals, Inc., 222 F.3d at 903. Notwithstanding the Eleventh Circuit's holding in Gamble, ViaSat argues that Plaintiff's TCPA claim is subject to arbitration because it meets this definition of a "Claim." See Arbitration Reply [D.E. 27 at 5]. Specifically, ViaSat contends that the Privacy Policy, which was incorporated into the Agreement, expressly covers, among other things, ViaSat's collection of customer information, including phone numbers, and the use of such information to market its services or to engage third parties to help it market its services. Id.; see Privacy Policy [D.E. 27-1 at 7]. Consequently, ViaSat argues that because the issue of whether Plaintiff consented to the Text Message requires an examination of the Agreement and the incorporated Privacy Policy, Plaintiff's TCPA claim relates to the Agreement and is thus a "Claim" covered by the Arbitration Provision. See Arbitration Reply [D.E. 27 at 5].

However, ViaSat's argument fails because the portion of the Privacy Policy on which it relies conflicts with the Contact Provision, which stated that ViaSat could use Plaintiff's information to contact him "for: (a) any account-related issues by calling or texting [him] at such number(s) using a prerecorded/artificial voice or text message delivered by an automatic telephone dialing system and/or using a call made by live individuals, and/or (b) for any account-related issues **or for marketing purposes by sending an e-mail to such e-mail address**." See Agreement [D.E. 15-1 at 6] (emphasis added). Hence, the Contact Provision explicitly limited ViaSat's ability to contact Plaintiff for marketing purposes to sending him e-mails. Id. Given this restriction, ViaSat cannot rely on the Privacy Policy to render Plaintiff's text message based TCPA claim within the definition of a "Claim." Therefore, Plaintiff's TCPA claim is not subject to arbitration.

7

## **MOTION TO DISMISS**

### **Applicable Law**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereafter, "Rule 12(b)(6)"), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The [c]ourt does not view each fact in isolation . . . but considers the complaint in its entirety." Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V., 155 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). A "complaint must allege sufficient facts to state a plausible claim to relief." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While detailed factual allegations are not necessary, "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations and quotations omitted). When reviewing a motion to dismiss, the court views the complaint in the light most favorable to the plaintiff and accepts the plaintiff's factual allegations as true. Leader Glob. Sols., 155 F. Supp. 3d at 1315.

The TCPA states:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). This definition of an ATDS "includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." Marks v. Crunch San Diego, LLC, 904 F. 3d 1041, 1043 (9th Cir. 2018); Adams v. Ocwen Loan Servicing, LLC, No. 18-81028-CIV, 2018 WL 6488062, at *3 (S.D. Fla. Oct. 26, 2018). A device may qualify as an ATDS if it "stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns." Marks, 904 F. 3d at 1053 (holding that evidence of such a device is sufficient to survive summary judgment).

Accordingly, to state a claim for a violation of the TCPA, a plaintiff must set forth sufficient facts supporting that: "(1) a call was made to a cell or wireless phone, (2) by the use of an automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." Adams, 2018 WL 6488062, at *2 (citations omitted) (emphasis in original). A plaintiff may not merely recite the statutory elements of the use of an ATDS or prerecorded voice without alleging additional supporting facts. Id. at *4. "Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more." Scott v. 360 Mortg. Grp., LLC, No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017) (citations omitted).

## Discussion

DIRECTV argues that Plaintiff failed to allege facts sufficient to show that the Text Message was sent by an ATDS. See Motion to Dismiss [D.E. 20]. The Amended Complaint provides a screenshot of the Text Message and alleges that the impersonal and generic nature of the Text Message demonstrates that Defendants used an ATDS. See Amended Complaint [D.E. 12 at 7-8]. Plaintiff also alleges that Defendants sent the Text Message by using a "long code," which enabled them "to send text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual," and a combination of hardware and software systems, "which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention." Id. at 9. Given these allegations, which suggest that the Text Message was sent to a mass audience by an autodial function, the undersigned finds that, for purposes of the Motion to Dismiss, Plaintiff has sufficiently alleged a claim under the TCPA. Defendants may renew the argument of whether the equipment used in this case was an ATDS at the summary judgment stage, after the parties have conducted discovery on this issue. See Adams, 2018 WL 6488062, at *4 (denying a motion to dismiss but allowing the defendant to raise at summary judgment the issue of whether an ATDS was used).

Alternatively, DIRECTV argues that the case should be stayed pending completion of the FCC's rulemaking process on the issue of what constitutes an ATDS. See Motion to Dismiss [D.E. 20 at 14-19]. However, the undersigned finds that such a stay "would be indefinite and solely in the interests of judicial economy, which the Supreme Court has found to be insufficient justification for a stay pending a similar proceeding." Mancini v. JPMorgan Chase Bank, N.A., No. 1:15-cv-61524, 2016 WL 1273185, at *1 (S.D. Fla. Mar. 28, 2016) (citing Landis v. North American Co., 299 U.S. 248, 257 (1936) and

denying a motion to stay a TCPA case pending the outcome of a case determining what equipment constitutes an ATDS).

## **CONCLUSION**

Based on the foregoing, it is

ORDERED AND ADJUDGED that ViaSat's Motion to Compel Arbitration [D.E. 15] is DENIED. It is further

ORDERED AND ADJUDGED that DIRECTV's Motion to Dismiss [D.E. 20] is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this 20th day of February, 2019.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Jose E. Martinez
     Counsel of Record